UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RIVENDELL WINERY, LLC, and SUSAN L. WINE,

                                        Plaintiffs,

        -against-

THE TOWN OF NEW PALTZ,
THE ZONING BOARD OF APPEALS                          **VERIFIED COMPLAINT**
OF THE TOWN OF NEW PALTZ,
LINDA DONOVAN, individually,
GAIL CHRISTMAN, individually,                        **Jury Trial Demanded**
PATRICIA SCHWARTZ, individually,
ROBERT HUGHES, individually,
JEFFREY CLOCK, individually,
THOMAS WIACEK, individually,
RODNEY WATROUS, individually,
KEVIN C. HARP, individually,
SUSAN ZIMET, individually,
THE COUNTY OF ULSTER, and
 "JOHN DOES" and/or "JANE DOES" #1-8,
individually and personally, representing
 the fictitious or partially fictitious names of individuals,
 whose full names are unknown to the Plaintiffs,

                                        Defendants.
-------------------------------------------------------------------X

        Plaintiffs, RIVENDELL WINERY, LLC, and SUSAN L. WINE, by their attorneys,

CAMPANELLI & ASSOCIATES, P.C., as and for their complaint respectfully allege as

follows:

## NATURE OF THE ACTION

        1.      This is a civil action seeking equitable relief, compensatory damages, punitive

damages, costs and attorneys fees, brought pursuant to 42 U.S.C. §§1983 and 1988, and the New

York State Constitution to redress: (a) violations of plaintiffs' rights to due process and equal

protection as guaranteed under the 5th and 14th Amendments of the United States Constitution

and Article I §§1 and 11 of the New York State Constitution, and (b) violation of the plaintiffs'

right to petition government for the redress of grievances as protected under the 1st Amendment of the United States Constitution and Article I §9 of the New York State Constitution.

## JURISDICTION AND VENUE

2.      Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution and laws of the United States.

3.      Jurisdiction of the court is also invoked pursuant to 28 U.S.C. §1343(a)(3) and §1343(a)(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

4.      Plaintiffs seek declaratory relief and compensatory damages pursuant to 28 U.S.C. §§ 2201(a) and 2202.

5.      Plaintiffs seek permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

6.      Plaintiffs seek reasonable attorney's fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988 and 42 U.S.C. §2000.

7.      Venue is proper in the Northern District of New York, pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in Ulster County, New York, and each of the defendants' residence or actual place of business and/or employ was within the Northern District of New York.

2

## THE PARTIES

8.    At all relevant times mentioned herein, plaintiff, RIVENDELL WINERY, LLC, was, and is, a limited liability company duly organized under the laws of the State of New York.

9.    At all relevant times described herein, plaintiff RIVENDELL WINERY, LLC maintained a principal place of business located in the Town of Gardiner, within the County of Ulster, State of New York.

10.    At all relevant times mentioned herein, plaintiff, SUSAN L. WINE, is an individual who currently resides at ▓▓▓▓▓▓▓▓▓▓▓, New Paltz , within the County of Ulster, State of New York 12561.

11.    Plaintiff, SUSAN L. WINE is a principal and owner/manager of plaintiff RIVENDELL WINERY, LLC.

12.    Upon information and belief, at all relevant times mentioned herein, the defendant, THE TOWN OF NEW PALTZ, was and continues to be a municipal corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

13.    Upon information and belief, at all relevant times mentioned herein, the defendant, THE ZONING BOARD OF APPEALS OF THE TOWN OF NEW PALTZ, was and continues to be a department, board and/or agency of the TOWN OF NEW PALTZ, with its principal place of business located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

14.     Upon information and belief, at all relevant times mentioned herein, the defendant, LINDA DONOVAN, was an individual and the Chairperson of the Zoning Board of Appeals for the Town of New Paltz.

15.     Upon information and belief, defendant LINDA DONOVAN's actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

16.     Upon information and belief, at all relevant times mentioned herein, the defendant, GAIL CHRISTMAN, was an individual and a Board Member of the Zoning Board of Appeals for the Town of New Paltz.

17.     Upon information and belief, defendant GAIL CHRISTMAN's actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

18.     Upon information and belief, at all relevant times mentioned herein, the defendant, PATRICIA SCHWARTZ, was an individual and a Board Member of the Zoning Board of Appeals for the Town of New Paltz.

19.     Upon information and belief, defendant PATRICIA SCHWARTZ' actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

20.     Upon information and belief, at all relevant times mentioned herein, the defendant, ROBERT HUGHES, was an individual and a Board Member of the Zoning Board of Appeals for the Town of New Paltz.

4

21.     Upon information and belief, defendant ROBERT HUGHES' actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

22.     Upon information and belief, at all relevant times mentioned herein, the defendant, JEFFREY CLOCK, was an individual and a Board Member of the Zoning Board of Appeals for the Town of New Paltz.

23.     Upon information and belief, defendant JEFFREY CLOCK's actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

24.     Upon information and belief, at all relevant times mentioned herein, the defendant, THOMAS WIACEK, was an individual and the building inspector for the Town of New Paltz.

25.     Upon information and belief, defendant THOMAS WIACEK's actual place of employ was located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

26.     Upon information and belief, at all relevant times mentioned herein, the defendant, RODNEY WATROUS, was an individual and the code enforcement officer for the Town of New Paltz.

27.     Upon information and belief, defendant RODNEY WATROUS' actual place of employ is located at the Town Hall of the Town of New Paltz, located at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

28.     Upon information and belief, at all relevant times mentioned herein, the defendant, KEVIN C. HARP was an individual with a principal place of residence located at 518 Albany Post Road, New Paltz, within the County of Ulster, State of New York 12561.

29.     Upon information and belief, at all relevant times mentioned herein, the defendant, SUSAN ZIMET, was an individual and a County Representative for the County of Ulster.

30.     Upon information and belief, defendant SUSAN ZIMET's actual place of employ is located at the Town Hall of the Town of New Paltz, located in the County Office Building, 244 Fair Street, Kingston, within the County of Ulster, State of New York 12401.

31.     At all relevant times mentioned herein, defendant THE COUNTY OF ULSTER, was and still is, a municipal corporation, with an actual place of business or employ situated in the County Office Building, 244 Fair Street, Kingston, within the County of Ulster, State of New York 12401.

32.     Upon information and belief, at all relevant times described herein, defendants John Doe/Jane Does #1-4 are individuals, who are employees, elected and/or appointed Officials of the County of Ulster.

33.     Upon information and belief, defendants John Doe/Jane Does' #1-4 actual place of business and/or employ is situated at the County Office Building, 244 Fair Street, Kingston, within the County of Ulster, State of New York 12401.

34.     Upon information and belief, at all relevant times described herein, defendants John Doe/Jane Does #5-8 are individuals, who are employees, elected and/or appointed Officials of the Town of New Paltz.

6

35.     Upon information and belief, defendants John Doe/Jane Does' #5-8 actual place of business and/or employ is situated at 1 Veterans Drive, New Paltz, within the County of Ulster, State of New York 12561.

## FACTS

### A.     Legislative Background

36.     In or about 1970, the State of New York embraced a concern regarding the loss of farming operations within the State.

37.     The State Legislature affirmatively recognized the socio-economic vitality of agriculture in the state as essential to the economic stability and growth of many local communities, and the state as a whole.

38.     Contemporaneously, the Legislature recognized that farming operations had come under increasing attack by local zoning authorities which passed local zoning ordinances, and/or applied local zoning ordinances in a manner which "unreasonably interfered" with farming operations within the State.

39.     In an affirmative effort to combat such interference, and to encourage the use of land for farming, in 1971, the State of New York enacted New York's Agricultural Districts Law Article 25-AA, to provide New York State oversight over farming operations within the State.

40.     As enacted, Article 25-AA enabled the State to not only encourage that real property situated within the State be used for farming, irrespective of whether it is owned, or rented, but also to ensure that persons who seek to engage in farming operations are protected, by the State, against unreasonable interference by local governments, inclusive of Towns such as the Town of New Paltz.

7

41.    In enacting such legislation, the State Legislature ensured that both its intent and its goals were made "crystal clear" by formally adopting an affirmative declaration of its findings and intent.

42.    As adopted, New York Agriculture and Markets Law Article 25-AA 300 provides as follows:

> "§300. Declaration of legislative findings and intent
>
> It is hereby found and declared that many of the agricultural lands in New York state are in jeopardy of being lost for any agricultural purposes.
> When nonagricultural development extends into farm areas, competition for limited land resources results. Ordinances inhibiting farming tend to follow, farm taxes rise, and hopes for speculative gains discourage investments in farm improvements, often leading to the idling or conversion of potentially productive agricultural land.
>
> The socio-economic vitality of agriculture in this state is essential to the economic stability and growth of many local communities and the state as a whole.
> It is, therefore, the declared policy of the state to conserve, protect, and encourage the development and improvement of its agricultural land for production of food and other agricultural products. It is also the declared policy of the state to conserve and protect agricultural lands as valued natural and ecological resources which provide needed open spaces for clean air sheds, as well as for aesthetic purposes."
>
> New York Agriculture and Markets Law Article 25-AA, §300.

43.    In accord with the explicitly stated legislative intent behind Agriculture & Markets Law Article 25-AA, the New York State Legislature enacted section §305 for the purpose of protecting persons who seek to engage in farming activities, from otherwise overly restrictive rules and ordinances of local governments, such as the defendant Town of New Paltz.

8

44.     Towards that end, New York State Agricultural and Markets Law §305-a explicitly provides that:

> "Local governments . . . shall not unreasonably restrict or regulate
> farm operations within agricultural districts in contravention of the
> purposes of this article unless it can be shown that the public health
> or safety is threatened"

New York Agricultural and Markets Law Article 25-AA, §305-a

45.     To ensure that such provision extended to afford protection not merely over the actual growing agricultural crops, but also to protection the related structures, buildings and/or operations which were reasonably necessary for the processing of same, and the maintenance of a farming operation as a viable commercial enterprise, the State of New York affirmatively adopted a definition of what constituted a "farming operation," which the State has defined as follows:

> "11. "Farm operation means the land and on-farm buildings, equipment . . .
> handing facilities and practices which contribute to the production preparation
> and marketing of crops . . . as a commercial enterprise . . .
> Such farm operation may consist of one or more parcels of owned or rented land,
> which parcels may be contiguous or noncontiguous to each other"

New York Agriculture and Markets Law §301(11).

46.     As intended by the State Legislature, persons who seek to engage in farming operations could secure protections, in the form of affirmative New York State oversight, against local government "unreasonably" interfering with their farming operations, inclusive of the operation and maintenance of buildings reasonably necessary for the operation a farming operation as a commercial enterprise.

47.     To enable persons to secure such State protection, the New York State Legislature created a statutory right for farm operators to file an application to have their respective farming operation added into an existing "Agricultural District," such as Ulster County Agricultural District No.2 *See* Agricultural & Markets Law Article 25-AA §303, §303-b.

48.     Once a farm operation is included into an Agricultural District, The New York State Commissioner of Agriculture and Markets becomes empowered to review any existing or proposed local law or ordinance to determine whether such local rule or ordinance is overly restrictive, or is being applied in a manner which unreasonably interferes with the farming operation.

49.     To the extent that the Commissioner finds that any such local law or ordinance is overly restrictive or unreasonably interferes with such farming operation, New York State law prohibits any local government, such as the Town of New Paltz, from applying such local law or ordinance to the farming operation.

50.     As explicitly provided by statute, the Commissioner may initiate such a review entirely on its own, or upon the request of a landowner within an Agricultural District.

51.     To the extent that any local government seeks to apply any law or ordinance which the Commissioner has found to unreasonably restrict such farm operations, the Commissioner is statutorily empowered to commence an action in the New York State Supreme Court to enforce §305-a, and obtain a court order permanently enjoining the local government from any efforts to apply their local law or ordinance against the farming operation.

10

## B. **Preliminary Facts**

52.     In 1987, Plaintiff Susan Wine formed the brand "Rivendell,"subsequently formed

plaintiff RIVENDELL WINERY, LLC (hereinafter referred to as "Rivendell") and established and

commenced operating a viticulture farming operation, which was situated within the Town of

Gardiner, Ulster County.

53.     As recognized by the State of New York, a viticulture farming operation consists of

a vineyard upon which wine-making grapes are grown, and a winery, within which such grapes are

processed into wine, which is thereafter sold.

54.     In connection with its viticulture operation, Rivendell began operating and

maintaining a vineyard and winery in 1987, and was issued a "Farm Winery License" in

connection with same, by the New York State Liquor Authority.

55.     From 1987 through the present, Rivendell has won numerous awards and has

enjoyed much goodwill and recognition for the high quality of its product.

56.     In 2004, Rivendell was awarded the Governor's Cup for the "Best New York

Wine" at the annual New York State Wine Competition, the first, and to date, only Hudson Valley

winery to attain such a prestigious honor.

57.     Rivendell continued to maintain its fifteen (15) acre vineyard from 1987 until 1994,

until the vineyard was irreparably damaged by severe storms, and had to be removed.

58.     For several years, Rivendell has been attempting to secure a new location with the

proper topography, soil and conditions for a new vineyard, so that it could resume its wine-grape-

growing agricultural production, the processing of same into wine, and the subsequent sale of the

wine produced.

11

59. Towards that end, in or about January 2007, Plaintiff Susan L. Wine acquired two (2) contiguous parcels of land in the Town of New Paltz, New York, with each parcel consisting of approximately two (2) acres.

60. These contiguous parcels are designated on the Town of New Paltz tax map as Section/Block/Lot 86.1-1-37.11 and Section/Block/Lot 86.1-1-37.12, respectively.

61. These contiguous parcels consist of vacant land with satisfactory soil growing conditions. The parcel identified as Section/Block/Lot 86.1-1-37.11 is improved with a recently constructed building which had not been occupied prior to the purchase of the parcel by plaintiff Wine.

62. On or about January 11, 2007, plaintiff Wine and plaintiff Rivendell entered into a lease wherein plaintiff Wine agreed to lease to plaintiff Rivendell the two 2-acre contiguous parcels for a term of ten (10) years for the purpose of operating a New York State farm winery.

63. Directly contiguous to these two (2) contiguous parcels owned by plaintiff Wine, is a parcel owned by Harry C. Tabak consisting of approximately ten (10) acres.

64. On or about October 16, 2007 a Letter of Agreement was entered into between Mr. Tabak and plaintiff Rivendell concerning plaintiff Rivendell leasing the approximately ten (10) acre parcel from Mr. Tabak.

65. Pursuant to the Agreement between Mr. Tabak and plaintiff Rivendell:
The terms of the lease will be strictly for agricultural use, specifically for purposes of growing grapes and producing wine.

66. The Agreement stated that terms and other details of the lease will be "fine tuned" and the lease will be forwarded to the plaintiffs for signature shortly thereafter.

67. However, pursuant to this Agreement, in contemplation of executing the lease, Mr. Tabak granted the plaintiffs permission to immediately begin preparing the soil for the growing of crops.

68. It is plaintiff Rivendell's intent to utilize the two 2-acre contiguous parcels leased from plaintiff Wine and the ten (10) contiguous acres leased from Mr. Tabak to create a New York State farm winery on the combined three (3) parcels (hereinafter referred to as the "premises").

69. Plaintiff Rivendell has begun to cultivate the premises and plant it with vineyards that will grow the grapes that will be utilized in the production of its product. Furthermore, Rivendell proposes to utilize the existing building on the premises, including the garage, for the production of wine, the display of wine, the storage, tasting and sale of wine, as well as for offices to be operated in conjunction with the farm winery, and an apartment for plaintiff Wine and her husband Robert Ransom.

## C. **The Zoning of the Plaintiffs' Premises**

70. The two 2-acre parcels owned by plaintiff Wine and the ten (10) acre parcel owned by Mr. Tabak, which comprise the "premises" leased by plaintiff Rivendell for the operation of the farm winery, are all located within the A-1.5 Zoning District of the Town of New Paltz.

71. The A-1.5 Zoning District of the defendant TOWN OF NEW PALTZ (hereinafter referred to as the "TOWN") permits certain land uses as of right.

72. Agriculture is a *permitted use as of right* in the A-1.5 Zoning District of the defendant TOWN where the entire premises is situated.

13

73.     The Zoning Ordinance of the Town of New Paltz §140-4, entitled "Word Usage and Definitions, contains a list of various terms set forth within the Zoning Ordinance, including the definition of certain permitted uses.

74.     Although "Agriculture" is specifically set forth in §140-8 of the Zoning Ordinance as a permitted use in the A-1.5 Zoning District, the term "Agriculture" is not specifically defined in §140-4 of the Zoning Ordinance of the Town of New Paltz.

### D. The Plaintiffs Submit a Site Plan Application to the Operate its Viticulture Operation as an *As-of-Right* use, permitted under the Town Code

75.     In furtherance of their attempt to establish and operate a farm winery on the premises located in the Town of New Paltz where "agriculture" is expressly a permitted use, on or about March 30, 2007 the plaintiffs filed an application with the TOWN Planning Board for site plan approval.

76.     Even prior to doing so, however, the plaintiffs received confirmation from then TOWN Planning Board Chairman Donald Malinowski that the plaintiffs proposed use was agricultural in an agricultural zone, thus was a permitted, as of right use and no variance or special exception permit of any kind would be required.

77.     The plaintiffs' site plan application conformed with the requirements of the Town of New Paltz Zoning Ordinance in that it indicated the proposed location of the farm winery including the vineyards, the production, storage and retail sale facilities, driveways, landscaping and parking.

14

78.     The plaintiffs' premises wherein the proposed farm winery was to be located is about one-quarter mile from, upon information and belief, one of the largest community supported agricultural projects in Ulster County, known as the Brook Farm Project, and is less than two-thirds of a mile from, upon information and belief, the largest corn producer and exporter in Ulster County.

79.     Furthermore, the plaintiffs' premises is adjacent to approximately sixty (60) acres of farmland that is included in Ulster County Agricultural District No.2 and is across the street from an equestrian facility.

80.     In response to plaintiffs' site plan application, on May 1, 2007, defendant WIACEK, the Building Inspector for the defendant TOWN, sent a letter to the TOWN Planning Board wherein he stated that although a farm winery is not mentioned in the TOWN zoning code, he does "*agree it is agricultural which is allowed* in [zone] A-1.5."

81.     Following this initial determination, however, several high powered and influential figures located within the TOWN who own property near the premises, upon information and belief, sufficiently influenced and pressured the defendant decision makers to change their determination a full one hundred and eighty degrees.

82.     Upon information and belief, one of these powerful and influential individuals was defendant KEVIN HARP.

83.     At all relevant times herein, defendant HARP was an Assistant District Attorney for Ulster County and upon information and belief, was the product of an old, influential family of lawyers residing in or near the TOWN for several generations.

15

84.     Defendant HARP is also a real estate developer of residential parcels along Albany Post Road, close to the plaintiffs' premises.

85.     Upon information and belief, defendant HARP, in collusion with others, utilized his notoriety, power and influence to pressure the defendants into denying the plaintiffs' as of right agricultural use farm winery, for strictly personal and economic reasons associated with his own property and property values.

86.     Thus, while the TOWN planning board was considering the plaintiffs' site plan application, defendant WIACEK, in a complete and unreasonable about-face, wrote a letter to the plaintiffs, dated July 26, 2007, wherein he stated that the proposed farm winery now was *not* a permitted use within the TOWN's A-1.5 zone.

87.     In short, defendant WIACEK argued that since the proposed use was a *commercial use*, it was not *an agricultural use*, and concomitantly, could not be permitted within the TOWN's A-1.5 zone.

88.     Acting with the explicitly stated intent to prohibit local governments from unreasonably interfering with farming operations within the State, the State of New York has affirmatively defined agricultural farming operations to include "commercial enterprises," as set forth within New York Agriculture & Markets Law 301(11), wherein the State has defined farming operations as follows:

> "11. "Farm operation means the land and on-farm buildings, equipment . . . handing facilities and practices which contribute to the production preparation and marketing of crops . . . *as a commercial enterprise* . . .
>
> New York Agriculture and Markets Law §301(11) [italics added]

16

89.     In direct defiance of New York State Law, defendant WIACEK posited that since the use of building on the property would constitute a business use, it could not be agricultural, and therefore could not be permitted in the A-1.5 zone.

90.     In attempt to buttress his untenable position, defendant WIACEK pointed to a definition of "Agriculture" as it pertained to the TOWN Zoning Ordinance under Article XIIIA (Clearing and Grading Control) and Article XV (Steep Slopes), wherein "Agriculture" is defined as follows:

> All agricultural operations and activities related to the growing or raising of crops, livestock products, and agricultural products, as such terms are defined in or governed by the Agricultural and Markets Law or the State of New York on lands qualified under Ulster County and NYS law for an agricultural exemption by the Assessor of the Town of New Paltz.

91.     Based upon Article XV of the Town Code, defendant WIACEK posited that the TOWN assessor must determine that the land is eligible for an agricultural exemption in order to be considered "agricultural."

92.     After several attempts to appeal to defendant WIACEK to reconsider his determination, on or about September 4, 2007, the plaintiffs appealed to defendant THE ZONING BOARD OF APPEALS OF THE TOWN OF NEW PALTZ (hereinafter referred to as defendant "ZBA") challenging defendant WIACEK's July 26, 2007 determination.

93.     Public hearings were held by defendant ZBA, and the plaintiffs presented strong and cogent arguments, and submitted documents in support of their position that the proposed farm winery constituted a permitted agricultural use under both the TOWN's Zoning Ordinance as well as New York State Agricultural and Markets Law.

17

94.    One of the submitted documents, of tremendous import, was a letter from Patrick

Hooker, New York State Commissioner of Agriculture and Markets (hereinafter referred to as the

"Commissioner"), dated August 6, 2007.  (Annexed hereto as Exhibit "A" is a true copy of this

letter from the Commissioner).

95.    In such letter (Exhibit A), the Commissioner set forth the State of New York's

position that, contrary to defendant WIACEK's position, the *entire* operation proposed by the

plaintiffs constituted a farm operation.  As stated by the Commissioner:

> As long as the wine that is prepared is composed predominantly of grapes produced
> on the farm, the processing and fermentation activity and the on-farm buildings and
> equipment which are needed to store and ferment the grapes which are processed on
> the farm *are part of the farm operation*.  The on-farm marketing of the wine under
> these circumstances is also part of the farm operation.

> (See Exhibit A, emphasis supplied).

96.    Recognizing that the plaintiffs would be moving to a new location, the

Commissioner indicated that the New York State Department of Agriculture & Markets would

treat the plaintiffs' premises as a "start-up" farming operation, that it would take five to six years

for their vines to produce sufficient grapes and further concluded:

> Based upon the above described information provided to you, applicable law, and
> upon consultation with the Advisory Council on Agriculture, it is my opinion that
> *the use of land in question for the production of grapes, the fermentation of such
> grapes to produce wine and the retail sale of the winery, is agricultural in nature*.

> (See Exhibit A, emphasis supplied).

97.    Two months later, after the State had advised the defendant ZBA that the plaintiffs

intended use of their property constituted an agricultural use, the Ulster County Planning Board

also notified the defendant ZBA that, contrary to defendant WIACEK's position, the *entire*

operation proposed by the plaintiffs constituted a farm operation.

98.     Ulster County is the county within which the defendant TOWN is located.

(Annexed hereto as Exhibit "B" is a true copy of the Ulster County Planning Board's

recommendation letter, dated October 3, 2007).

99.     The defendant ZBA had specifically asked the Ulster County Planning Board for its

recommendation and interpretation as to whether the plaintiffs' farm winery was a permitted use in

the TOWN's A-1.5 Zoning District.

100.    In response, the Ulster County Planning Board, specifically addressing defendant

WIACEK's determination, stated as follows:

> Is a Farm Winery an agricultural use?
>
> We have examined the Building Inspector's [WIACEK] comment that since the land that the building occupies is not counted toward the agricultural exemption, then the use of the building is not agricultural and therefore must be business.
>
> We do not disagree with the statement excluding the land under the building from the exemption determination. *However*, [NY Agricultural and Markets Law] does not determine that buildings used for agricultural production or even sale of agricultural products are not agricultural uses on the basis that the lands they sit on do not qualify for exemption. Indeed, many buildings not part of an exemption enjoy AML recognition and protection as agricultural uses... [WIACEK's] conclusion that the lack of exemption for lands under the winery building makes the use non agricultural ("a business") *is not supported* by the way the AML determines agricultural use of structures. Taken further, [WIACEK's] determination would affect the agricultural use classification under the Town statute of barns, farmstands, and farmworking housing since the lands they sit on also do not qualify for an exemption.
>
> Finally, it would appear that the New York State Department of Agriculture & Markets Commissioner Patrick Hooker, upon consultation with the Advisory Council on Agriculture, has determined that *both the use of land and the process of producing wine and its sale are agricultural in nature*...
>
> The evidence suggests that *a farm winery is an agricultural use within the Town's zoning statute* as it relates to the Town's plans. Support may also be found in the interaction between the zoning statute and the AML.
> (See Exhibit B, emphasis supplied).

19

101. The Ulster County Planning Board concluded that "[w]ithin the confines of the AML, *as referenced in the Town Statute and within the Town's own planning documents, the ZBA has support to determine that the use is agricultural in nature and in fact.*" (See Exhibit B, emphasis supplied).

102. Notwithstanding the above, on or about December 18, 2007, the defendant ZBA unanimously voted to uphold the July 26, 2007 interpretation of defendant WIACEK and deny the plaintiffs' appeal, in direct contravention of New York State Law, the affirmative determinations of the New York State Commissioner of Agriculture and Markets, the Ulster County Planning Board and a myriad of opinion letters from scholars, elected officials and persons in the industry, all supporting the plaintiffs' position.

103. In making its decision, the defendant ZBA presented absolutely nothing to contradict the determinations and recommendations in support of the plaintiffs' position.

104. Moreover, the process by which this vote and decision took place was highly suspect.

105. Prior to the December 18, 2007 vote and decision by the defendant ZBA, a work session was held on December 11, 2007. At this work session, three of the five members of the defendant ZBA, namely defendants DONOVAN, SCHWARTZ and CLOCK, unequivocally indicated that they were prepared to grant the plaintiffs' appeal and vote to overturn the determination of this building inspector, defendant WIACEK.

20

106.    However, a mere one week later, all five members of the defendant ZBA, including defendants DONOVAN, SCHWARTZ and CLOCK, voted to deny the plaintiffs' appeal, thus upholding the determination of defendant WIACEK without any further discussion of the matter whatsoever.

107.    There was no basis or reasons given for the decision of the defendant ZBA, which flew directly in the face of the determinations of the New York State Commissioner of Agriculture and Markets, the Ulster County Planning Board and the various opinion letters of scholars, elected officials and persons in the industry, all supporting the plaintiffs' position.

108.    Furthermore, at the December 18, 2007 meeting, counsel for defendant ZBA, Joseph Moriello, Esq., produced previously prepared typewritten copies of a twelve page decision for the defendant ZBA to approve. There was no discussion whatsoever at this meeting.

109.    This demonstrates that discussions, communications and deliberations were held between members of the defendant ZBA and its counsel in violation of New York State Open Meetings Law, and that counsel for defendant ZBA was directed by the ZBA to prepare the December 18, 2007 decision in advance of the actual meeting.

110.    Further exacerbating the fact that the defendants unreasonably and unlawfully denied the plaintiffs' as of right agricultural use of their property is an email sent from the defendant TOWN's attorney, George Lithco, to defendant WIACEK on or about August 23, 2007. (Annexed hereto as Exhibit "C" is a true copy of the August 23, 2007 email from Mr. Lithco to defendant WIACEK).

21

111.     In this email to defendant WIACEK, the TOWN attorney acknowledged the determination of Commissioner Hooker, that the plaintiffs' use is in fact a farm operation as defined by New York Agriculture and Markets Law, but stated that the Commissioner's determination did not address the definition of agriculture as it pertains to the TOWN Zoning Ordinance.

112.     In so stating, the TOWN attorney referenced the same definition of agriculture from the TOWN Zoning Ordinance under "Clearing and Grading Control" and "Steep Slopes" cited by defendant WIACEK in his July 26, 2007 determination, namely that to be considered an agricultural use, the land in question must qualify for an agricultural exemption by the Assessor of the Town of New Paltz.

113.     The TOWN attorney specifically informed defendant WIACEK that "to meet the zoning definition of agriculture, the operation must not only meet the requirements of the Ag Markets Law, but it must be on land which qualifies for an agricultural assessment." (See Exhibit C).

114.     On or about November 13, 2007, Michael Dunham, the Assessor for the defendant TOWN determined that nine (9) of the plaintiffs' acres would in fact qualify for the agricultural exemption. (Annexed hereto as Exhibit "D" is a true copy of the TOWN Assessor's determination).

115.     The TOWN assessor's determination was copied to defendant DONOVAN, chairwoman of the defendant ZBA, defendant WIACEK, the TOWN building inspector, as well as the TOWN attorney, George Lithco. (See Exhibit D).

22

116.   Thus, prior to their December 18, 2007 determination, the defendant ZBA was fully aware of the fact that the majority of the plaintiffs' premises qualified for the agricultural exemption when they struck down the plaintiffs' appeal and upheld the determination of defendant WIACEK.

117.   This was the case even though both defendant WIACEK and the TOWN attorney determined that based on the TOWN Zoning Ordinance, the only way for the plaintiffs to be able to make agricultural use of their premises would be if it qualified for an agricultural exemption.

118.   Upon receiving confirmation that the premises would in fact qualify for an agricultural exemption, the defendants still set about to unlawfully prevent the plaintiffs from making as of right agricultural use of their premises.

### E. The Plaintiffs Apply for Inclusion Into
### Ulster County Agricultural District No. 2

119.   In line with the agricultural character of their surrounding area, and due to the fact that they intended to make agricultural use of their premises as a farm winery, the plaintiffs applied for inclusion into the Ulster County Agricultural District No.2.

120.   In 1971, the State of New York enacted New York State Agricultural and Markets Law §305-a for the purpose of providing persons who seek to commence or maintain farming operations, inclusive of viticulture operations, State protection against local governments which unreasonably interfere, restrict or regulate such farming operations.

121.   As enacted, 305-a explicitly provides that:

> "Local governments . . . shall not unreasonably restrict or regulate farm operations within agricultural districts in contravention of the purposes of this article unless it can be shown that the public health or safety is threatened"
> New York Agricultural and Markets Law Article 25-AA, §305-a

23

122.   To enable persons to secure such State protection, the New York State Legislature created a statutory right for persons seeking to operate farming operations to file an application to have their respective farming operation added into an existing "Agricultural District" such as Ulster County Agriculture District # 2 *See* Agricultural & Markets Law Article 25-AA §303, §303-b.

123.   Once a farm operation is included into an Agricultural District, The New York State Commissioner of Agriculture and Markets becomes empowered to review any existing or proposed local law or ordinance to determine whether such local rule or ordinance is overly restrictive, or is being applied in a manner which unreasonably interferes with the farming operation.

124.   To the extent that the Commissioner finds or has found that any local government, such as the TOWN, has applied or is applying any law or ordinance in a manner which is overly restrictive or that it unreasonably interferes with a farming operation, New York State law prohibits such local government, such as the Town of New Paltz, from applying such local law or ordinance to that farming operation.

125.   As explicitly provided by statute, the Commissioner may initiate such a review entirely on his own, or upon the request of a landowner within an Agricultural District.

126.   To the extent that any local government seeks to apply any law or ordinance which the Commissioner has found to unreasonably restrict such farm operations, the Commissioner is statutorily empowered to commence an action in the New York State Supreme Court to enforce §305-a, and obtain a court order permanently enjoining the local government from any efforts to apply their local law or ordinance against the farming operation.

24

127.    The plaintiffs knew that their intended use of their premises as a winery constituted a "farming operation" under New York State Law, as confirmed by the New York State Commissioner of Agriculture and Markets, yet the defendants prevented the TOWN from approving the plaintiffs' agricultural use site plan based upon the pretext that a farm winery is not an agricultural use.

128.    As such, the plaintiffs' knew that if their premises were simply added to the County's Agricultural District, the defendants would be prohibited from unreasonably preventing them from operating their farming operation, under the pretext of applying a "more restrictive" definition of a "farming operation," than that which has been adopted by The State of New York.

129.    Moreover, the plaintiffs also knew that the Commissioner would become vested with the power to prevent the defendant TOWN from doing so, and if necessary, to sue the Town to secure injunctive relief against the Town from the New York State Supreme Court.

130.    To secure these protections, which the respective sections of New York State Ag. & Markets were explicitly intended to afford them, all the plaintiffs had to do was file an application for, and obtain inclusion in, the County's existing Agricultural District.

131.    Upon filing that application with Ulster County for the specific purpose of securing statutory protections which New York State Laws were intended to afford farming operations such as the plaintiffs' viticulture farming operation, the defendants became openly enraged, and possessed of a determination to punish the plaintiffs and prevent them from operating their viticulture operation.

132.    In or around March 2007, the plaintiffs submitted their first application to be included into Ulster County Agricultural District No. 2.

25

133.    On or about May 31, 2007, the Ulster County Agriculture and Farmland Protection
Board sent a letter to the Ulster County Legislature recommending the plaintiffs' parcel for
*inclusion* into Ulster County Agricultural District No. 2.

134.    On or about July 9, 2007, when the defendants learned that approval of the
plaintiffs' application for inclusion was imminent, Ulster County Representative and former
TOWN Supervisor, defendant SUSAN ZIMET, personally called one of plaintiffs' principals and
"suggested" that the plaintiffs withdraw their application.

135.    Defendant ZIMET, citing public opposition to the plaintiffs' inclusion which
obviously had no bearing on the recommendation of the County Agricultural and Farmland
Protection Board, told the plaintiffs to "let the dust settle" and that it would be a "neighborly
gesture" to withdraw their application.

136.    The following day, heeding defendant ZIMET's "suggestion," and after already
being recommended for inclusion into the Agricultural District, the plaintiffs withdrew their
application via letter.

137.    As it turns out, the plaintiffs later learned that defendant ZIMET also possessed a
personal and financial motivation to keep the plaintiffs' property out of the Agricultural District
and prevent the establishment of their as of right farm winery within the TOWN.

138.    Less than three (3) weeks later, as described above, defendant WIACEK issued his
determination that the plaintiffs' proposed use as a farm winery was not agricultural in nature.

26

139.    Had the plaintiffs been included into the Agricultural District, they would have received New York State protection against such overly restrictive municipal action as described above, especially in light of the fact that the New York State Commissioner of Agriculture and Markets had already determined that the plaintiffs' use was an agricultural use.

140.    Forced to wait another year before being able to once again apply for inclusion into the Agricultural District, the plaintiffs submitted their second application with Ulster County for inclusion in or about March 2008.

141.    Just as the year before, in or around May 2008, the Ulster County Agriculture and Farmland Protection Board voted to recommend inclusion of the plaintiffs' parcel in the Agricultural District, although this time it was unanimous.

142.    However, on or about July 9, 2008, the Ulster County Legislature voted to *deny* the plaintiffs' inclusion into the Agricultural District.

143.    Ulster County Representative defendant ZIMET abstained from voting, citing the fact that her property values would be adversely affected by the establishment of the plaintiffs' farm winery on the premises.

144.    Upon information and belief, defendant ZIMET, for her own personal, political and economic advantage, influenced her fellow legislators to vote against the plaintiffs' inclusion into the Agricultural District.

145.    During the executive session, when it appeared that the Ulster County Legislature was prepared to vote to exclude the plaintiffs' premises from the Agricultural District in direct contravention to the recommendation of the County's Agriculture and Farmland Protection Board, Legislator Falosetto spoke out in favor of the plaintiffs and explicitly indicate *on the record* that

27

the Legislature was *not* making a decision based on legitimate reasons, but rather for *political reasons*.

146.    Legislator Falosetto unequivocally stated:

"Not including [the plaintiffs] in the Agricultural District is totally wrong."

"A winery is a part of farming."

"If a winery is not agricultural, what is?"

"There is a lot of politics going on here.  We better take a good hard look at what we are doing to these people."

"Think about what you are doing."

"This is an injustice to our democratic process."

147.    Based solely on personal and economic reasons and the resulting political pressure, the defendants successfully prevented the County from approving the plaintiffs' application for inclusion into the County's Agricultural District, and concomitantly prevented the plaintiffs from securing protections from the State of New York.

148.    This "pressure" was applied behind closed doors, as reflected by the County's own records within which there is not a single shred of documentation regarding or concerning legitimate communications to County officials which reflected any basis to deny the plaintiffs' entry into the Agricultural District.

149.    In fact, all documentation supports the plaintiffs' inclusion into the Agricultural District.

150.    Because the defendants applied such pressure "behind closed doors" the plaintiff was deprived of its procedural due process rights and was deprived of any opportunity to address, counter or prevent the defendants' underhanded intervention.

28

### F. The Disparate Treatment of
### Similarly Situated Agricultural Lands

151.    Notwithstanding the defendant TOWN and ZBA's adoption of defendant

WIACEK's determination and reasoning that the plaintiffs' use of the premises as a farm winery

would constitute a business use and not an agricultural use thus denying their as of right farm

winery, numerous similarly situated farms located in the TOWN who have approved agricultural

uses contain buildings or structures to process, market and sell their products, and contain a

residence, just as the plaintiffs herein have proposed.

152.    Examples of such similarly situated farms located within the TOWN are Walkill

View Farm, Bradley Farms, Dressel Farm, Huguenot Street Farm and Taliaferro Farm.

153.    These farms are all similarly situated to the plaintiffs' proposed use of their

premises as a farm winery, as follows:

(a)    all farms are located within the Town of New Paltz;

(b)    all farms are permitted agricultural uses as of right in their respective zoning

district;

(c)    all farms contain buildings and/or structures;

(d)    the buildings and/or structures are used to process the respective farm's

produce and are used to market and sell same;

(e)    all farms sell their own products, as well as products brought in from

elsewhere;

(f)    all farms (with the exception of the plaintiffs) are included within the Ulster

County Agricultural District No. 2;

(g)    all farms qualify for an agricultural exemption from the TOWN assessor;

29

     (h)     on all farms (with the exception of Bradley Farms), the proprietors live in a residence located on the farm.

154.    On or about February 7, 2008, the plaintiffs sent a letter to defendant WATROUS, the TOWN's code enforcement officer.

155.    In this letter, the plaintiffs informed defendant WATROUS that based upon the defendant ZBA's finding which upheld the determination of defendant WIACEK, namely buildings used for farm processing, sales and housing are not agricultural uses, that there are other farms doing just that who are able to operate as full agricultural uses.

156.    The plaintiffs' demanded that the TOWN apply its zoning code equally and that all citizens be treated similarly.

157.    Incredibly, in his response letter to the plaintiffs, dated February 25, 2008, defendant WATROUS acknowledged that the TOWN was treating the plaintiffs' differently than other farms and that defendant WIACEK's interpretation of the TOWN zoning code and resulting determination only applied to the plaintiffs. (Annexed hereto as Exhibit "E" is a true copy of defendant WATROUS' February 25, 2008 letter to the plaintiffs).

158.    In this letter, defendant WATROUS explicitly stated:

> "With respect to the various issues raised in your [February 7, 2008] letter, the determination of the Building Inspector was made with respect to the facts represented in the Rivendell Winery/Wine application, and *is limited to those facts. This office is not aware of any facts that demonstrate the applicability of that determination to the other circumstances described in your letter*."

(See Exhibit E, emphasis supplied).

30

## EACH OF THE DEFENDANTS ARE PERSONS WHO
## ACTED UNDER COLOR OF STATE LAW

*Defendant Linda Donovan is a "person" who acted under*
*color of state law within the meaning of 42 U.S.C. § 1983*

159.    While intentionally engaging in the improper and unlawful conduct described

herein, defendant LINDA DONOVAN was clothed with the authority of local law as the

Chairperson for the Zoning Board of Appeals of the Town of New Paltz.

160.    The wrongs committed by the actions of all of the defendants, including defendant

LINDA DONOVAN, and the injuries sustained by the plaintiffs as a result thereof, were rendered

possible only because of the veil of local authority lodged in defendant LINDA DONOVAN by

virtue of her position as the Chairperson for the Zoning Board of Appeals of the Town of New

Paltz.

161.    The wrongs committed by defendant LINDA DONOVAN constituted a misuse of

the power possessed by defendant LINDA DONOVAN by virtue of local law and defendant

LINDA DONOVAN's capacity and position as the Chairperson for the Zoning Board of Appeals

of the Town of New Paltz.

162.    The wrongs committed by defendant LINDA DONOVAN were planned,

orchestrated and committed during the regular business hours of defendant LINDA DONOVAN's

official office and within the hours during which defendant LINDA DONOVAN is responsible for

fulfilling her official duties as the Chairperson for the Zoning Board of Appeals of the Town of

New Paltz.

31

163.    In committing the wrongs described herein, defendant LINDA DONOVAN held herself out to be acting in his capacity as the Chairperson for the Zoning Board of Appeals of the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant LINDA DONOVAN influenced and/or were influenced by as described herein.

164.    Accordingly, in committing the acts described herein, defendant LINDA DONOVAN was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

*Defendant Gail Christman is a "person" who acted under color of state law within the meaning of 42 U.S.C. § 1983*

165.    While intentionally engaging in the improper and unlawful conduct described herein, defendant GAIL CHRISTMAN was clothed with the authority of local law as a board member of the Zoning Board of Appeals of the Town of New Paltz.

166.    The wrongs committed by the actions of all of the defendants, including defendant GAIL CHRISTMAN, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant GAIL CHRISTMAN by virtue of her position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

167.    The wrongs committed by defendant GAIL CHRISTMAN constituted a misuse of the power possessed by defendant GAIL CHRISTMAN by virtue of local law and defendant GAIL CHRISTMAN's capacity and position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

168.    The wrongs committed by defendant GAIL CHRISTMAN were planned, orchestrated and committed during the regular business hours of defendant GAIL CHRISTMAN's official office and within the hours during which defendant GAIL CHRISTMAN is responsible for fulfilling her official duties as a board member of the Zoning Board of Appeals of the Town of New Paltz.

169.    In committing the wrongs described herein, defendant GAIL CHRISTMAN held herself out to be acting in his capacity as a board member of the Zoning Board of Appeals of the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant GAIL CHRISTMAN influenced and/or were influenced by as described herein.

170.    Accordingly, in committing the acts described herein, defendant GAIL CHRISTMAN was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

### Defendant Patricia Schwartz is a "person" who acted under color of state law within the meaning of 42 U.S.C. § 1983

171.    While intentionally engaging in the improper and unlawful conduct described herein, defendant PATRICIA SCHWARTZ was clothed with the authority of local law as a board member of the Zoning Board of Appeals of the Town of New Paltz.

172.    The wrongs committed by the actions of all of the defendants, including defendant PATRICIA SCHWARTZ, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant PATRICIA SCHWARTZ by virtue of her position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

173.    The wrongs committed by defendant PATRICIA SCHWARTZ constituted a misuse of the power possessed by defendant PATRICIA SCHWARTZ by virtue of local law and defendant PATRICIA SCHWARTZ' capacity and position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

174.    The wrongs committed by defendant PATRICIA SCHWARTZ were planned, orchestrated and committed during the regular business hours of defendant PATRICIA SCHWARTZ' official office and within the hours during which defendant PATRICIA SCHWARTZ is responsible for fulfilling her official duties as a board member of the Zoning Board of Appeals of the Town of New Paltz.

175.    In committing the wrongs described herein, defendant PATRICIA SCHWARTZ held herself out to be acting in his capacity as a board member of the Zoning Board of Appeals of the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant PATRICIA SCHWARTZ influenced and/or were influenced by as described herein.

176.    Accordingly, in committing the acts described herein, defendant PATRICIA SCHWARTZ was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

*Defendant Robert Hughes is a "person" who acted under*
*color of state law within the meaning of 42 U.S.C. § 1983*

177.    While intentionally engaging in the improper and unlawful conduct described herein, defendant ROBERT HUGHES was clothed with the authority of local law as a board member of the Zoning Board of Appeals of the Town of New Paltz.

34

178.    The wrongs committed by the actions of all of the defendants, including defendant ROBERT HUGHES, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant ROBERT HUGHES by virtue of his position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

179.    The wrongs committed by defendant ROBERT HUGHES constituted a misuse of the power possessed by defendant ROBERT HUGHES by virtue of local law and defendant ROBERT HUGHES' capacity and position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

180.    The wrongs committed by defendant ROBERT HUGHES were planned, orchestrated and committed during the regular business hours of defendant ROBERT HUGHES' official office and within the hours during which defendant ROBERT HUGHES is responsible for fulfilling his official duties as a board member of the Zoning Board of Appeals of the Town of New Paltz.

181.    In committing the wrongs described herein, defendant ROBERT HUGHES held himself out to be acting in his capacity as a board member of the Zoning Board of Appeals of the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant ROBERT HUGHES influenced and/or were influenced by as described herein.

182.    Accordingly, in committing the acts described herein, defendant ROBERT HUGHES was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

35

*Defendant Jeffrey Clock is a "person" who acted under*
*color of state law within the meaning of 42 U.S.C. § 1983*

183.    While intentionally engaging in the improper and unlawful conduct described herein, defendant JEFFREY CLOCK was clothed with the authority of local law as a board member of the Zoning Board of Appeals of the Town of New Paltz.

184.    The wrongs committed by the actions of all of the defendants, including defendant JEFFREY CLOCK, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant JEFFREY CLOCK by virtue of his position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

185.    The wrongs committed by defendant JEFFREY CLOCK constituted a misuse of the power possessed by defendant JEFFREY CLOCK by virtue of local law and defendant JEFFREY CLOCK's capacity and position as a board member of the Zoning Board of Appeals of the Town of New Paltz.

186.    The wrongs committed by defendant JEFFREY CLOCK were planned, orchestrated and committed during the regular business hours of defendant JEFFREY CLOCK's official office and within the hours during which defendant JEFFREY CLOCK is responsible for fulfilling his official duties as a board member of the Zoning Board of Appeals of the Town of New Paltz.

187.    In committing the wrongs described herein, defendant JEFFREY CLOCK held himself out to be acting in his capacity as a board member of the Zoning Board of Appeals of the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant JEFFREY CLOCK influenced and/or were influenced by as described herein.

188.    Accordingly, in committing the acts described herein, defendant JEFFREY CLOCK was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

*Defendant Thomas Wiacek is a "person" who acted under*
*color of state law within the meaning of 42 U.S.C. § 1983*

189.    While intentionally engaging in the improper and unlawful conduct described herein, defendant THOMAS WIACEK was clothed with the authority of local law as the building inspector for the Town of New Paltz.

190.    The wrongs committed by the actions of all of the defendants, including defendant THOMAS WIACEK, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant THOMAS WIACEK by virtue of his position as the building inspector for the Town of New Paltz.

191.    The wrongs committed by defendant THOMAS WIACEK constituted a misuse of the power possessed by defendant THOMAS WIACEK by virtue of local law and defendant THOMAS WIACEK's capacity and position as the building inspector for the Town of New Paltz.

192.    The wrongs committed by defendant THOMAS WIACEK were planned, orchestrated and committed during the regular business hours of defendant THOMAS WIACEK's official office and within the hours during which defendant THOMAS WIACEK is responsible for fulfilling his official duties as the building inspector for the Town of New Paltz.

193.    In committing the wrongs described herein, defendant THOMAS WIACEK held himself out to be acting in his capacity as the building inspector for the Town of New Paltz, and was viewed to be acting in such capacity by the persons to whom defendant THOMAS WIACEK influenced and/or were influenced by as described herein.

37

194.    Accordingly, in committing the acts described herein, defendant THOMAS
WIACEK was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

*Defendant Rodney Watrous is a "person" who acted under*
*color of state law within the meaning of 42 U.S.C. § 1983*

195.    While intentionally engaging in the improper and unlawful conduct described
herein, defendant RODNEY WATROUS was clothed with the authority of local law as the code
enforcement officer for the Town of New Paltz.

196.    The wrongs committed by the actions of all of the defendants, including defendant
RODNEY WATROUS, and the injuries sustained by the plaintiffs as a result thereof, were
rendered possible only because of the veil of local authority lodged in defendant RODNEY
WATROUS by virtue of his position as the code enforcement officer for the Town of New Paltz.

197.    The wrongs committed by defendant RODNEY WATROUS constituted a misuse of
the power possessed by defendant RODNEY WATROUS by virtue of local law and defendant
RODNEY WATROUS' capacity and position as the code enforcement officer for the Town of
New Paltz.

198.    The wrongs committed by defendant RODNEY WATROUS were planned,
orchestrated and committed during the regular business hours of defendant RODNEY
WATROUS' official office and within the hours during which defendant RODNEY WATROUS is
responsible for fulfilling his official duties as the code enforcement officer for the Town of New
Paltz.

199.    In committing the wrongs described herein, defendant RODNEY WATROUS held

himself out to be acting in his capacity as the code enforcement officer for the Town of New Paltz,

and was viewed to be acting in such capacity by the persons to whom defendant RODNEY

WATROUS influenced and/or were influenced by as described herein.

200.    Accordingly, in committing the acts described herein, defendant RODNEY

WATROUS was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

### Defendant Kevin C. Harp is a "person" who acted under color of state law within the meaning of 42 U.S.C. §1983

201.    The wrongs committed by defendant KEVIN C. HARP, and the injuries sustained

by the plaintiffs as a result thereof, were rendered possible only because of the veil of local

authority lodged in defendant KEVIN C. HARP by virtue of position as an Assistant District

Attorney for the County of Ulster and his relationship with employees, agents and representatives

of the Zoning Board of Appeals of the Town of New Paltz, the Town of New Paltz and the County

of Ulster, which was expressly created under local law.

202.    The wrongs committed by defendant KEVIN C. HARP in conjunction with the

Town and County employees constituted a misuse of the power possessed by them by virtue of

local law and defendants capacity and position as employees of the Town and County.

203.    The wrongs committed by the defendant KEVIN C. HARP in conjunction with the

Town and County and their employees were planned, orchestrated and committed during the

regular business hours of the Town and County employees official office and within the hours

during which they were responsible for fulfilling their official duties as employees of the Town

and County.

39

204.    In committing the wrongs described herein, defendant KEVIN C. HARP relied on the authority of the Town and County and their employees as acting in their capacity as employees of the Town and County and was viewed to be acting in such capacity by others.

205.    Accordingly, in committing the acts described herein, defendant KEVIN C. HARP was a person acting under color of state law within the purview of 42 U.S.C. §1983.

### *Defendant Susan Zimet is a "person" who acted under color of state law within the meaning of 42 U.S.C. § 1983*

206.    While intentionally engaging in the improper and unlawful conduct described herein, defendant SUSAN ZIMET was clothed with the authority of local law as a County Representative for the County of Ulster.

207.    The wrongs committed by the actions of all of the defendants, including defendant SUSAN ZIMET, and the injuries sustained by the plaintiffs as a result thereof, were rendered possible only because of the veil of local authority lodged in defendant SUSAN ZIMET by virtue of her position as a County Representative for the County of Ulster.

208.    The wrongs committed by defendant SUSAN ZIMET constituted a misuse of the power possessed by defendant SUSAN ZIMET by virtue of local law and defendant SUSAN ZIMET's capacity and position as a County Representative for the County of Ulster.

209.    The wrongs committed by defendant SUSAN ZIMET were planned, orchestrated and committed during the regular business hours of defendant SUSAN ZIMET's official office and within the hours during which defendant SUSAN ZIMET is responsible for fulfilling her official duties as a County Representative for the County of Ulster.

210.    In committing the wrongs described herein, defendant SUSAN ZIMET held herself

out to be acting in his capacity as a County Representative for the County of Ulster, and was

viewed to be acting in such capacity by the persons to whom defendant SUSAN ZIMET

influenced and/or were influenced by as described herein.

211.    Accordingly, in committing the acts described herein, defendant SUSAN ZIMET

was a person acting under color of state law within the purview of 42 U.S.C. § 1983.

> *Defendants John Does and Jane Does are "persons" who acted under*
> *color of state law within the meaning of 42 U.S.C. § 1983.*

212.    While intentionally engaging in the improper and unlawful conduct described

herein, John Doe and Jane Doe defendants were clothed with authority of being officials and/or

employees of the County of Ulster and/or the Town of New Paltz.

213.    The wrongs committed by said defendants, and the injuries sustained by the

plaintiffs as a result thereof, were rendered possible only because of the veils of local authority

lodged in said defendants by virtue of their respective offices with The County of Ulster and/or the

Town of New Paltz.

214.    The wrongs committed by said defendants constituted a misuse of the power

possessed by said defendants by virtue of local law and defendants respective capacities and

positions.

215.    The wrongs committed by said defendants were planned, orchestrated and

committed during the regular business hours of defendants' official offices and within the hours

during which said defendants were responsible for fulfilling their official duties as officials and/or

employees of the County of Ulster and/or the Town of New Paltz.

41

216.   In committing the wrongs described herein, said defendants held themselves out to be acting in their official capacities, and were viewed to be acting in such capacities by the persons whom said defendants influenced as described herein.

217.   Accordingly, in committing the acts described herein, defendants John Does/Jane Does were persons acting under color of state law within the purview of 42 U.S.C. § 1983.

### THE TOWN IS A "PERSON" LIABLE TO THE PLAINTIFFS UNDER 42 U.S.C. § 1983 BECAUSE THE DEFENDANTS' ACTIONS WERE UNDERTAKEN PURSUANT TO POLICY AND/OR CUSTOM

218.   At all relevant times mentioned herein, defendants LINDA DONOVAN, GAIL CHRISTMAN, PATRICIA SCHWARTZ, ROBERT HUGHES, JEFFREY CLOCK, THOMAS WIACEK and RODNEY WATROUS were all officials who held titles and positions under the defendant TOWN OF NEW PALTZ' Code, who were authorized to create the policies under which Town Code was to be applied and enforced.

219.   These defendants were clothed with the authority to make official government policy, and laws, on behalf of the TOWN OF NEW PALTZ.

220.   As such, their wrongful actions in relation to the plaintiffs represent the TOWN OF NEW PALTZ' official governmental policy.

221.   At all relevant times mentioned herein, defendant DONOVAN was the Chairperson for the Zoning Board of Appeals for the TOWN OF NEW PALTZ, defendants CHRISTMAN, SCHWARTZ, HUGHES and CLOCK served as board members on the Zoning Board of Appeals for the TOWN OF NEW PALTZ, defendant WIACEK was the TOWN OF NEW PALTZ' building inspector, and defendant WATROUS was the TOWN OF NEW PALTZ' code enforcement officer, and as such, each was authorized to advise as to the Town's policies, or lack

42

thereof as to the operation of the plaintiffs' establishment.

222.   Because the actions of these defendants, as described herein above, constituted the Town's official policy, the Town is also a "person" liable for their wrongful actions within the purview of 42 U.S.C. § 1983.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF PLAINTIFFS' CLEARLY ESTABLISHED RIGHT TO PETITION GOVERNMENT FOR THE REDRESS OF GRIEVANCES PURSUANT TO THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

223.   The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "222" herein above, with the same force and effect as if fully set forth at length herein.

224.   At all times described herein the plaintiffs' were, and remain, possessed of a clearly established right to petition government for the redress of grievances, as is explicitly afforded protection under the First Amendment to The United States Constitution.

225.   At all times described herein, the plaintiffs possessed clearly established rights to petition the County of Ulster for the inclusion of their premises within the County's Agricultural District which has been established under New York State Agricultural and Markets Law, Article 25-AA.

226.   As is set forth within the explicit language of New York State Agricultural and Markets Law, the purpose of the law is to enable persons possessed of a desire to pursue farming operations, to secure New York State protection, against local government officials who seek to "unreasonably interfere with" their attempts to engage in or maintain such farming operations.

43

227.    Due to the nature of the relevant provisions of New York State Agricultural and Markets Law, namely State oversight and review of restrictive local government action towards farms and agriculture, local governments, such as the defendant TOWN, view these provisions with contempt and seek to prevent agricultural land from inclusion into Agricultural Districts which would afford the landowner State protection.

228.    Where, as here, local government officials seek to prevent a property owner from engaging in a farming operation, under the guise of applying a more restrictive definition of what constitutes a "farming operation" than what the State of New York has explicitly defined to be a farming operation, a property owner, such as the plaintiff has the right to file an application to secure inclusion into an existing Agricultural District, and to thereby secure protection from The New York State Commissioner of Agriculture & Markets, whom can then legally prohibit the local officials from interfering with the property owners' farming operation.

229.    From a U.S. Constitutional perspective, the filing of such a petition seeking such relief, is no different from filing a lawsuit in a state Court to secure protection through another State mechanism, its Courts.

230.    As such, the plaintiffs' right to file an application for inclusion into a State recognized Agricultural District falls squarely within the protection of the plaintiffs' First Amendment right to petition government for the redress of grievances.

231.    The defendants violated the plaintiffs right to petition government for the redress of grievances, by deliberately depriving the plaintiffs of a fair procedure in the processing of that petition free from undue political influence and personal motivation.

44

232.   Because pursuant to New York State Agricultural and Markets Law, neither the
TOWN nor its officials possess the decision making authority with respect to a particular parcel's
inclusion into an Agricultural District, the defendants "applied pressure behind closed doors" to
stop the County from granting the plaintiffs' application for inclusion, notwithstanding the fact
that the plaintiffs' premises was twice recommended for inclusion by the Ulster County
Agriculture and Farmland Protection Board.

233.   By communicating behind closed doors, the plaintiffs were deprived of any fair
application procedure through which they could rebut or counter the efforts and non-public
communications being tendered by the defendants.

234.   Had the plaintiffs' application been granted, New York State law would explicitly
bar the defendants from unreasonably interfering with the plaintiffs' efforts to operate their
vineyard and winery operation as a farming operation under New York Agriculture and Markets
Law Article 25-AA.

235.   In the event that the defendants thereafter proceeded to interfere with the plaintiffs
operations as described hereinabove, the plaintiffs would possess a statutorily created right to
request that the Commissioner order the defendant to cease such interference, as the Commissioner
is authorized to do under New York State law.

236.   In addition, the Commissioner would be statutorily empowered to commence an
action within the New York State Supreme Court to secure a Court order permanently enjoining
the defendants from engaging in such unreasonable interference with the plaintiffs farming
operations.

45

237.    It is obvious from the facts and the chronology of events as outlined above that the defendants' actions were motivated by a desire, on the part of the defendants' to prevent the plaintiffs from lawfully exercising their First Amendment rights, and to deprive the plaintiffs of any semblance of a fair procedure in the County's consideration of the plaintiffs' application.

238.    Directly evidencing undue political influence conducted "behind closed doors", during the executive session, when it appeared that the Ulster County Legislature was prepared to vote to exclude the plaintiffs' premises from the Agricultural District in direct contravention to the recommendation of the Agriculture and Farmland Protection Board, County Legislator Falosetto spoke out in favor of the plaintiffs and acknowledged the fact that the Legislature was not making a decision based on legitimate reasons, but rather for political reasons.

239.    Legislator Falosetto unequivocally stated:

> "There is a lot of politics going on here.  We better take a good hard look at what we are doing to these people."

> "Not including [the plaintiffs] in the Agricultural District is totally wrong."

> "A winery is a part of farming."

> "If a winery is not agricultural, what is?"

> "Think about what you are doing."

> "This is an injustice to our democratic process."

240.    As a result of the defendants actions, the plaintiffs have been damaged by being unable to use their properties in a manner by which they are legally permitted to do, as a matter of right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of their land.

241.    All of the injuries described herein above were actually and proximately caused by the concerted, deliberate and calculated acts of the defendants described herein.

242.    The plaintiffs have no adequate remedy under state law to secure redress for such U.S. Constitutional violations

243.    All of the aforementioned actions on the part of the defendants were undertaken by the defendants who were, at all relevant times described herein, acting under color of state law.

244.    The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

245.    In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT TWO

### VIOLATION OF PLAINTIFFS' CLEARLY ESTABLISHED RIGHT TO PETITION GOVERNMENT FOR THE REDRESS OF GRIEVANCES PURSUANT TO ARTICLE 1 SECTION 9 OF THE NEW YORK STATE CONSTITUTION

246.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "245" herein above, with the same force and effect as if fully set forth at length herein.

247.    At all times described herein the plaintiffs' were, and remain, possessed of a clearly established right to petition government for the redress of grievances, as is explicitly afforded protection under Article 1, Section 9 of the New York State Constitution.

248.    At all times described herein, the plaintiffs possessed clearly established rights to petition the County of Ulster for the inclusion of their premises within the County's Agricultural District which has been established under New York State Agricultural and Markets Law, Article

47

25-AA.

249.     As is set forth within the explicit language of New York State Agricultural and Markets Law, the purpose of the law is to enable persons possessed of a desire to pursue farming operations, to secure New York State protection, against local government officials who seek to "unreasonably interfere with" their attempts to engage in or maintain such farming operations.

250.     Due to the nature of the relevant provisions of New York State Agricultural and Markets Law, namely State oversight and review of restrictive local government action towards farms and agriculture, local governments, such as the defendant TOWN, view these provisions with contempt and seek to prevent agricultural land from inclusion into Agricultural Districts which would afford the landowner State protection.

251.     Where, as here, local government officials seek to prevent a property owner from engaging in a farming operation, under the guise of applying a more restrictive definition of what constitutes a "farming operation" than what the State of New York has explicitly defined to be a farming operation, a property owner, such as the plaintiff has the right to file an application to secure inclusion into an existing Agricultural District, and to thereby secure protection from The New York State Commissioner of Agriculture & Markets, whom can then legally prohibit the local officials from interfering with the property owners' farming operation.

252.     From a New York State Constitutional perspective, the filing of such a petition seeking such relief, is no different from filing a lawsuit in a state Court to secure protection through another State mechanism, its Courts.

48

253.    As such, the plaintiffs' right to file an application for inclusion into a State recognized Agricultural District falls squarely within the protection of the plaintiffs' right to petition government for the redress of grievances as expressly afforded by Article 1, Section 9 of the New York State Constitution.

254.    The defendants violated the plaintiffs right to petition government for the redress of grievances, by deliberately depriving the plaintiffs of a fair procedure in the processing of that petition free from undue political influence and personal motivation.

255.    Because pursuant to New York State Agricultural and Markets Law, neither the TOWN nor its officials possess the decision making authority with respect to a particular parcel's inclusion into an Agricultural District, the defendants "applied pressure behind closed doors" to stop the County from granting the plaintiffs' application for inclusion, notwithstanding the fact that the plaintiffs' premises was twice recommended for inclusion by the Ulster County Agriculture and Farmland Protection Board.

256.    By communicating behind closed doors, the plaintiffs were deprived of any fair application procedure through which they could rebut or counter the efforts and non-public communications being tendered by the defendants.

257.    Had the plaintiffs' application been granted, New York State law would explicitly bar the defendants from unreasonably interfering with the plaintiffs' efforts to operate their vineyard and winery operation as a farming operation under New York Agriculture and Markets Law Article 25-AA.

258.    In the event that the defendants thereafter proceeded to interfere with the plaintiffs

operations as described hereinabove, the plaintiffs would possess a statutorily created right to

request that the Commissioner order the defendant to cease such interference, as the Commissioner

is authorized to do under New York State law.

259.    In addition, the Commissioner would be statutorily empowered to commence an

action within the New York State Supreme Court to secure a Court order permanently enjoining

the defendants from engaging in such unreasonable interference with the plaintiffs farming

operations.

260.    It is obvious from the facts and the chronology of events as outlined above that the

defendants' actions were motivated by a desire, on the part of the defendants' to prevent the

plaintiffs from lawfully exercising their New York Constitutional rights, and to deprive the

plaintiffs of any semblance of a fair procedure in the County's consideration of the plaintiffs'

application.

261.    Directly evidencing undue political influence conducted "behind closed doors",

during the executive session, when it appeared that the Ulster County Legislature was prepared to

vote to exclude the plaintiffs' premises from the Agricultural District in direct contravention to the

recommendation of the Agriculture and Farmland Protection Board, County Legislator Falosetto

spoke out in favor of the plaintiffs and acknowledged the fact that the Legislature was not making

a decision based on legitimate reasons, but rather for political reasons.

262.  Legislator Falosetto unequivocally stated:

"There is a lot of politics going on here.  We better take a good hard look at what we are doing to these people."

"Not including [the plaintiffs] in the Agricultural District is totally wrong."

"A winery is a part of farming."

"If a winery is not agricultural, what is?"

"Think about what you are doing."

"This is an injustice to our democratic process."

263.  As a result of the defendants actions, the plaintiffs have been damaged by being unable to use their properties in a manner by which they are legally permitted to do, as a matter of right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of their land.

264.  All of the injuries described herein above were actually and proximately caused by the concerted, deliberate and calculated acts of the defendants described herein.

265.  The plaintiffs have no adequate remedy under state law to secure redress for such New York State Constitutional violations

266.  All of the aforementioned actions on the part of the defendants were undertaken by the defendants who were, at all relevant times described herein, acting under color of state law.

267.  The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

268.  In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT THREE

## DUE PROCESS CLAIMS UNDER THE FIFTH AND
## FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Procedural Due Process - 42 U.S.C. §1983)

269.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "268" herein above, with the same force and effect as if fully set forth at length herein.

270.    At all times described herein, the plaintiffs possessed the clearly established property rights, under New York State Laws, to purchase, own and enjoy their properties without unlawful deprivation of their use or enjoyment, to employ such properties in the manner of their choosing, and to apply for any permits requisite to or necessary for such uses, without unlawful and arbitrary interference from the defendants.

271.    Under New York State law, the plaintiffs' property rights extend to include, but are not limited to: (a) the right to submit a site plan to pursue an as of right farming operation upon their real properties, (b) the plaintiffs' statutorily provided right to apply for inclusion of the plaintiffs real properties into Ulster County's Agricultural District, and (c) the rights to a fair procedure in the processing of such zoning related applications, which is a separate and distinct property right recognized under New York State Law.

272.    At all times described herein, the plaintiffs possessed clearly established liberty interests and property rights to pursue its lawful business and/or occupation free of arbitrary, discriminatory, unreasonable and/or arbitrary governmental interference.

273.    At all times described herein, the plaintiffs possessed clearly established liberty interests and property rights to use and develop their land to their own economic advantage.

52

274. At all times described herein, pursuant to the Town of New Paltz Zoning Ordinance, the plaintiffs possessed a property right to submit a site plan application to the TOWN planning board.

275. At all times described herein the plaintiffs possessed a property right to submit an application with the County of Ulster for inclusion into its Agricultural District.

276. At all times described herein, the plaintiffs possessed a property right to a fair procedure in the consideration of the merits of their respective applications.

277. At all times described herein, the plaintiffs possessed an expectancy that changes consistent with the Town of New Paltz' basic zoning plan will be permitted frequently and on their merits, as a normal incident of property ownership.

278. By deliberately and intentionally interfering with the processing of the plaintiffs' applications, and by engaging in conversations "behind closed doors" with the purpose of denying the plaintiffs' applications for personal, economic and/or political reasons, the defendants deprived the plaintiffs of their New York State property rights and their liberty rights, as stated above, without due process of law, in violation of the plaintiffs rights under the Fourteenth Amendment to the United States Constitution.

279. As described herein above, the defendants herein deliberately deprived the plaintiffs of all of the above-referenced property rights and liberty interests, without due process of law, by:

(a)     Unlawfully and unreasonably preventing the plaintiffs from
        pursuing an as of right farming operation upon their real properties, and

(b)     Preventing the plaintiffs from securing inclusion of their real

properties into the County's Agricultural District, by depriving the

plaintiffs of a "fair procedure" in the County's consideration of such

application, through the exercise of unlawful and or undue political

influence over County representatives, and

(c)     Further depriving the plaintiffs of fair procedures, in refusing to

process or grant use permits and/or land related approvals required

under TOWN regulations or ordinances, the processing

or granting of which, the plaintiff is entitled to as a matter of right.

280.    The defendants' conspired actions of depriving the plaintiffs of any fair procedure

with respect to the plaintiffs various applications and land use permits, were driven by improper

motivation, such as personal, political and economic gain and for the purpose of punishing the

plaintiffs for their lawful desire to operate a vineyard and winery and pursuit of causing such

farming operation to be included into the County of Ulster's Agricultural District.

281.    In effectuating such deprivations, while simultaneously engaging in calculated,

deliberate and successful efforts to ensure that the plaintiffs were deprived of due process of law,

the defendants violated the plaintiffs right to procedural due process as guaranteed under the

Fourteenth Amendment of the United States Constitution; as such, each of the defendants are

individually liable to the plaintiffs pursuant to 42 U.S.C. § 1983.

282.    As set forth more fully above, the defendants' actions unlawfully deprived the

plaintiffs of its property and liberty rights in violation of procedural due process as guaranteed

under the Fourteenth Amendment of the United States Constitution.

54

283.    As discussed herein above, each of the individually named defendants herein took an active part in, and/or ratified a consistent and systematic pattern of misconduct which was intentionally and maliciously intended by the defendants to delay and ultimately defeat the plaintiffs' various applications in violation of the plaintiffs' property rights, in willful violation of the plaintiffs U.S. Constitutional rights.

284.    Having substantially interfered with and/or deprived the plaintiffs of their liberty and property interests without having afforded the plaintiffs any opportunity at a meaningful time and meaningful manner within which to review the defendants' concerted behavior, the defendants violated the plaintiffs' right to procedural due process as guaranteed to the plaintiffs under the Fourteenth Amendment of the U.S. Constitution.

285.    As a result of the aforesaid defendants' violation of plaintiffs' procedural due process rights, the plaintiffs have been damaged by being unable to use the property in a manner by which they were permitted to do as a matter of law and right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of the land.

286.    All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

287.    The aforesaid defendants' violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

288.    Having deliberately violated the plaintiffs Constitutionally protected rights, and concomitantly having caused the plaintiffs to sustain monetary damages as a result thereof each of the defendants are personally liable to the plaintiffs, and the plaintiffs are entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

289.    The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

290.    In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT FOUR

### DUE PROCESS CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Substantive Due Process - 42 U.S.C. §1983)

291.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "290" herein above, with the same force and effect as if fully set forth at length herein.

292.    At all times described herein, the plaintiffs were vested of constitutionally protected property rights and liberty interests, as set forth herein above.

293.    As detailed herein above, the defendants arbitrarily, capriciously and deliberately deprived the plaintiffs of such property rights and liberty interests, and engaged in a pattern of insidious, spiteful and malicious conduct which was oppressive in an constitutional sense, in violation of the plaintiffs rights to substantive due process, as guaranteed the plaintiffs under the Fourteenth Amendment to the United States Constitution.

294.    As a result of the aforesaid defendants' violation of plaintiffs' substantive due process rights, the plaintiffs have been damaged by being unable to use the property in a manner by which they were permitted to do as a matter of law and right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of the land.

295.     All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

296.     The aforesaid defendants' violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

297.     Having deliberately violated the plaintiffs Constitutionally protected rights, and concomitantly having caused the plaintiffs to sustain monetary damages as a result thereof each of the defendants are personally liable to the plaintiffs, and the plaintiffs are entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

298.     The actions of the defendants were performed with actual spite, malice, and an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs U.S. Constitutional rights.

299.     In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT FIVE

### THE DEFENDANTS DENIED THE PLAINTIFFS DUE PROCESS UNDER ARTICLE I SECTION 1 OF THE NEW YORK STATE CONSTITUTION

300.     The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "299" herein above, with the same force and effect as if fully set forth at length herein.

301.     At all times described herein, the plaintiffs possessed the clearly established property rights, under New York State Laws, to purchase, own and enjoy their properties without unlawful deprivation of their use or enjoyment, to employ such properties in the manner of their choosing, and to apply for any permits requisite to or necessary for such uses, without unlawful

and arbitrary interference from the defendants.

302.    Under New York State law, the plaintiffs' property rights extend to include, but are not limited to: (a) the right to submit a site plan to pursue an as of right farming operation upon their real properties, (b) the plaintiffs' statutorily provided right to apply for inclusion of the plaintiffs real properties into Ulster County's Agricultural District, and (c) the rights to a fair procedure in the processing of such zoning related applications, which is a separate and distinct property right recognized under New York State Law.

303.    At all times described herein, the plaintiffs possessed clearly established liberty interests and property rights to pursue its lawful business and/or occupation free of arbitrary, discriminatory, unreasonable and/or arbitrary governmental interference.

304.    At all times described herein, the plaintiffs possessed clearly established liberty interests and property rights to use and develop their land to their own economic advantage.

305.    At all times described herein, pursuant to the Town of New Paltz Zoning Ordinance, the plaintiffs possessed a property right to submit a site plan application to the TOWN planning board.

306.    At all times described herein the plaintiffs possessed a property right to submit an application with the County of Ulster for inclusion into its Agricultural District.

307.    At all times described herein, the plaintiffs possessed a property right to a fair procedure in the consideration of the merits of their respective applications.

308.    At all times described herein, the plaintiffs possessed an expectancy that changes consistent with the Town of New Paltz' basic zoning plan will be permitted frequently and on their merits, as a normal incident of property ownership.

58

309.    By deliberately and intentionally interfering with the processing of the plaintiffs'
applications, and by engaging in conversations "behind closed doors" with the purpose of denying
the plaintiffs' applications for personal, economic and/or political reasons, the defendants deprived
the plaintiffs of their New York State property rights and their liberty rights, as stated above,
without due process of law, in violation of the plaintiffs due process rights as guaranteed under
Article I, Section 1 of the New York State Constitution.

310.    As described herein above, the defendants herein deliberately deprived the plaintiffs
of all of the above-referenced property rights and liberty interests, without due process of law, by:

(a)    Unlawfully and unreasonably preventing the plaintiffs from

        pursuing an as of right farming operation upon their real properties, and

(b)    Preventing the plaintiffs from securing inclusion of their real

        properties into the County's Agricultural District, by depriving the

        plaintiffs of a "fair procedure" in the County's consideration of such

        application, through the exercise of unlawful and or undue political

        influence over County representatives, and

(c)    Further depriving the plaintiffs of fair procedures, in refusing to

        process or grant use permits and/or land related approvals required

        under TOWN regulations or ordinances, the processing

        or granting of which, the plaintiff is entitled to as a matter of right.

59

311.    The defendants' conspired actions of depriving the plaintiffs of any fair procedure with respect to the plaintiffs various applications and land use permits, were driven by improper motivation, such as personal, political and economic gain and for the purpose of punishing the plaintiffs for their lawful desire to operate a vineyard and winery and pursuit of causing such farming operation to be included into the County of Ulster's Agricultural District.

312.    In effectuating such deprivations, while simultaneously engaging in calculated, deliberate and successful efforts to ensure that the plaintiffs were deprived of due process of law, the defendants violated the plaintiffs right to procedural due process as guaranteed under Article I, Section 1 of the New York State Constitution.; as such, each of the defendants are individually liable to the plaintiffs.

313.    As set forth more fully above, the defendants' actions unlawfully deprived the plaintiffs of its property and liberty rights in violation of procedural due process as guaranteed under Article I, Section 1 of the New York State Constitution..

314.    As discussed herein above, each of the individually named defendants herein took an active part in, and/or ratified a consistent and systematic pattern of misconduct which was intentionally and maliciously intended by the defendants to delay and ultimately defeat the plaintiffs' various applications in violation of the plaintiffs' property rights, in willful violation of the plaintiffs New York State Constitutional rights.

315.    Having substantially interfered with and/or deprived the plaintiffs of their liberty and property interests without having afforded the plaintiffs any opportunity at a meaningful time and meaningful manner within which to review the defendants' concerted behavior, the defendants violated the plaintiffs' right to procedural due process as guaranteed to the plaintiffs under Article

I, Section 1 of the New York State Constitution.

316.     As a result of the aforesaid defendants' violation of plaintiffs' procedural due process rights, the plaintiffs have been damaged by being unable to use the property in a manner by which they were permitted to do as a matter of law and right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of the land.

317.     All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

318.     Having deliberately violated the plaintiffs Constitutionally protected rights, and concomitantly having caused the plaintiffs to sustain monetary damages as a result thereof each of the defendants are personally liable to the plaintiffs, and the plaintiffs are entitled to secure relief against the defendants.

319.     The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

320.     In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT SIX

### THE DEFENDANTS DENIED THE PLAINTIFFS EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THEIR RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Equal Protection - 42 U.S.C. §1983)

321.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "320" herein above, with the same force and effect as if fully set forth at length herein.

322.    Because the plaintiffs' desired to use their property in a manner by which they were entitled to as a matter of right pursuant to TOWN Code, but in a manner inconsistent with the personal and political agenda of the defendants, the defendants unlawfully interfered with the plaintiffs' as of right use in complete degradation of their civil rights.

323.    The defendants' actions discriminated against the plaintiffs as a class of one.

324.    As set forth hereinabove, the defendants treated the plaintiffs differently than other similarly situated agricultural land owners.

325.    Notwithstanding the defendant TOWN and ZBA's adoption of defendant WIACEK's determination and reasoning that the plaintiffs' use of the premises as a farm winery would constitute a business use and not an agricultural use thus denying their as of right farm winery, numerous similarly situated farms located in the TOWN, that have approved agricultural uses, contain buildings or structures to process, market and sell their products, and contain a residence, just as the plaintiffs herein have proposed.

326.    The defendants' denial of plaintiffs right to use their property in a manner by which they were entitled to as a matter of right pursuant to TOWN Code, was subjectively motivated by a personal, economical, political, malicious and bad faith intent to injure plaintiffs.

62

327.    The aforesaid defendants' discrimination against the plaintiffs based on personal animus lacks any rational basis, and were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

328.    As a result of the aforesaid defendants' violation of plaintiffs' equal protection rights, the plaintiffs have been damaged by being unable to use the property in a manner by which they were permitted to do as a matter of law and right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of the land.

329.    All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

330..    The aforesaid defendants' violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

331.    Having deliberately violated the plaintiffs Constitutionally protected rights, and concomitantly having caused the plaintiffs to sustain monetary damages as a result thereof each of the defendants are personally liable to the plaintiffs, and the plaintiffs are entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

332.    The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

333.    In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT SEVEN

### THE DEFENDANTS DENIED THE PLAINTIFFS EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THEIR RIGHTS UNDER <u>ARTICLE I SECTION 11 OF THE NEW YORK STATE CONSTITUTION</u>

334.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "333" herein above, with the same force and effect as if fully set forth at length herein.

335.    Because the plaintiffs' desired to use their property in a manner by which they were entitled to as a matter of right pursuant to TOWN Code, but in a manner inconsistent with the personal and political agenda of the defendants, the defendants unlawfully interfered with the plaintiffs' as of right use in complete degradation of their civil rights.

336.    The defendants' actions discriminated against the plaintiffs as a class of one.

337.    As set forth hereinabove, the defendants treated the plaintiffs differently than other similarly situated agricultural land owners.

338.    Notwithstanding the defendant TOWN and ZBA's adoption of defendant WIACEK's determination and reasoning that the plaintiffs' use of the premises as a farm winery would constitute a business use and not an agricultural use thus denying their as of right farm winery, numerous similarly situated farms located in the TOWN, that have approved agricultural uses, contain buildings or structures to process, market and sell their products, and contain a residence, just as the plaintiffs herein have proposed.

339.    The defendants' denial of plaintiffs right to use their property in a manner by which they were entitled to as a matter of right pursuant to TOWN Code, was subjectively motivated by a personal, economical, political, malicious and bad faith intent to injure plaintiffs.

340.   The aforesaid defendants' discrimination against the plaintiffs based on personal animus lacks any rational basis, and were made under color of state law, which constitutes "state action."

341.   As a result of the aforesaid defendants' violation of plaintiffs' equal protection rights, the plaintiffs have been damaged by being unable to use the property in a manner by which they were permitted to do as a matter of law and right, and by the loss of income and profits from being unable to use, derive a benefit from, and/or profit from the use of the land.

342.   All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

343.   Having deliberately violated the plaintiffs Constitutionally protected rights, and concomitantly having caused the plaintiffs to sustain monetary damages as a result thereof each of the defendants are personally liable to the plaintiffs, and the plaintiffs are entitled to secure relief against the defendants, pursuant to Article I, Section 11.

344.   The actions of the defendants were performed with an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs' rights.

345.   In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## COUNT EIGHT

## THE DEFENDANTS CONSPIRACY TO VIOLATE
## THE PLAINTIFFS' CIVIL RIGHTS

(Conspiracy Claim - 42 U.S.C. §1983)

346.   The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "345" herein above, with the same force and effect as if fully set forth at length herein.

347.   Each and all of the defendants conspired with and among each other in order to violate the plaintiffs' rights, under First, Fifth and Fourteenth Amendments, as described herein.

348.   Acting under the direction of, and in conspiracy with, defendant HARP, the remaining defendants conspired amongst and between each other to unlawfully deprive the plaintiffs, either directly or indirectly, of their First Amendment rights to petition the government for the redress of grievances, of their property and liberty rights under the due process clause and their rights to equal protection under the law as guaranteed under the Fourteenth Amendment of the United States Constitution.

349.   In furtherance of the conspiracy, as described herein above, the defendants engaged in a consistent and systematic pattern of misconduct which was intentionally and maliciously intended by the defendants to defeat the plaintiffs' various applications in violation of the plaintiffs' constitutional rights.

350.   The aforesaid defendants' violation of plaintiffs' constitutional rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

351.   The defendants' conspiracy to deprive the plaintiffs of their first amendment rights and their due process and equal protection rights under the Fourteenth Amendment to the United States Constitution is in violation of 42 U.S.C. § 1983.

352.     In carrying out their conspiracy against the plaintiffs, the defendants engaged in conduct which was performed with actual spite, malice, and an affirmative intent to injure the plaintiffs, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiffs U.S. Constitutional rights.

353.     In view of the forgoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully demand the following relief:

## COUNT ONE

## VIOLATION OF PLAINTIFFS' CLEARLY
## ESTABLISHED RIGHT TO PETITION GOVERNMENT
## FOR THE REDRESS OF GRIEVANCES

1.     For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.     For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3.     For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4.     For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

5.     For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

6.     For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

7.     For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

8.     For such other and further relief as this court may deem just and proper.

## COUNT TWO

### VIOLATION OF PLAINTIFFS' CLEARLY ESTABLISHED RIGHT TO PETITION GOVERNMENT FOR THE REDRESS OF GRIEVANCES PURSUANT TO ARTICLE 1 SECTION 9 OF THE NEW YORK STATE CONSTITUTION

1.     For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.     For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3.   For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

4.   For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

5.   For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

6.   For such other and further relief as this court may deem just and proper.

## COUNT THREE

## DUE PROCESS CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Procedural Due Process - 42 U.S.C. §1983)

1.   For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.   For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

69

3.    For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

6.    For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

7.    For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

8.    For such other and further relief as this court may deem just and proper.

## COUNT FOUR

### DUE PROCESS CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Substantive Due Process - 42 U.S.C. §1983)

1.    For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2. For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3. For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

5. For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

6. For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

7. For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

8. For such other and further relief as this court may deem just and proper.

## COUNT FIVE

### THE DEFENDANTS DENIED THE PLAINTIFFS DUE PROCESS UNDER ARTICLE I SECTION 1 OF THE NEW YORK STATE CONSTITUTION

1. For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2. For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3. For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

4. For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

5. For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

6. For such other and further relief as this court may deem just and proper.

72

## COUNT SIX

### THE DEFENDANTS DENIED THE PLAINTIFFS EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THEIR RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Equal Protection - 42 U.S.C. §1983)

1.  For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.  For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3.  For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4.  For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

5.  For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

6.  For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

7.  For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs'

application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

8.     For such other and further relief as this court may deem just and proper.

**COUNT SEVEN**

**THE DEFENDANTS DENIED THE PLAINTIFFS EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THEIR RIGHTS UNDER ARTICLE I SECTION 11 OF THE NEW YORK STATE CONSTITUTION**

1.     For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.     For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3.     For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

4.     For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2; and

5.     For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs'

74

application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

6.     For such other and further relief as this court may deem just and proper.

## COUNT EIGHT

## THE DEFENDANTS CONSPIRACY TO VIOLATE THE PLAINTIFFS' CIVIL RIGHTS

(Conspiracy Claim - 42 U.S.C. §1983)

1.     For compensatory damages against all defendants (except The County of Ulster and the Town of New Paltz) jointly and severally, in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount proven at trial;

2.     For punitive damages against all defendants (except The County of Ulster and The Town of New Paltz), jointly and severally; in the amount of Fifteen Million dollars ($15,000,000.00) or in such an amount awarded at trial;

3.     For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4.     For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c);

5.     For a Declaratory Judgment determining that the plaintiffs have met all of the criteria under which the plaintiffs' application for inclusion into the Ulster County Agricultural District No. 2 should be granted;

6.     For injunctive relief compelling the defendant County of Ulster to include the plaintiffs real property into the County's Agricultural District No.2;

7.   For injunctive relief enjoining all defendants from interfering further with the plaintiffs efforts to secure any form of approvals or licenses associated with the plaintiffs intended use of their properties, from County, State or other governmental authorities, and an Order directing the defendants to process the plaintiffs' application(s) lawfully, properly, and in conjunction with existing Town rules and ordinances, and in accord with the normal procedure applied to all other property owners and/or tenants applicants within the Town of New Paltz; and

8.   For such other and further relief as this court may deem just and proper.

Dated: May 5, 2009
       Mineola, New York

                              CAMPANELLI & ASSOCIATES, P.C.
                              Attorneys for Plaintiffs

                              By: _____ s/ _____
                              David A. Antwork, Esq. (Bar No. 515392)
                              129 Front Street
                              Mineola, New York 11501
                              Tel: (516) 746-1600
                              Fax: (516) 746-2611
                              daa@campanellipc.com

# VERIFICATION

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF SUFFOLK          )


SUSAN WINE, being duly sworn, deposes and states that I am a Plaintiff in this action and

that the foregoing COMPLAINT is true to the best of my knowledge, except to those matters

therein stated to be alleged upon information and belief and as to those matters I believe them to

be true.


                                                    _____
                                                    SUSAN WINE


Sworn to before me on this
5th day of May 2009.


_____
NOTARY PUBLIC


LINDA W. MAYO
Notary Public, State of New York
No. 01MA5026581
Qualified in Dutchess County
Commission Expires April 25, *2010*